**MOVANT'S EXHIBIT NO. 1**

State of VIRGINIA

# FIXED RATE NOTE
# CLOSED END
# (Home Equity Conversion)

November 25, 2013

FHA Case No. ███████████
Loan No. ███████████
MIN: ███████████

**2000 Miller School Road, Charlottesville, Virginia 22903** (Property Address)

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Lender" means **American Nationwide Mortgage Company, Inc** and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **November 25, 2013** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on **December 16, 2093**. Interest will be charged on unpaid principal at the rate of **Five AND Sixty Thousandth** percent (**5.060%**) per year until the full amount of principal has been paid. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month and in turn shall accrue interest thereon at the interest rates specified in this Note.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 6 of this Note.

### (B) Place
Payment shall be made at **American Nationwide Mortgage Company, Inc, 3820 Northdale Blvd, Suite 111A, Tampa, FL 33624** or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. BORROWER'S RIGHT TO PREPAY
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or



HECMFirstNote-2013

penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 10 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance.

To the extent Borrower prepays any outstanding balance under this Note, such amounts will no longer be available to be advanced under this Note.

## 6. IMMEDIATE PAYMENT-IN-FULL

### (A) Death or Sale

Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

### (B) Other Grounds

Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.



HECMFirstNote-2013

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**(E)** During the First 12-Month Disbursement Period, Borrower agrees to return to Lender any funds advanced to Borrower that exceed the Initial Disbursement Limit as defined in the HECM Loan Agreement.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor, and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 10. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255 (i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

> (i) This Note is assigned to the Secretary; or
> (ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

> If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

> (i) Be required to pay amounts owed under this Note until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 6 of this Note; or



HECMFirstNote-2013

(ii) Be obligated to pay interest under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraph 2 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (SEAL)          _____
Michael J Underhill                                                              Date

This is to certify that this is the Note described in and secured by a Deed of Trust dated

_November 25_, 20 _13_ on the Property located in _Albemarle County_ Virginia.

_____
Notary Public

Notary Registration number: _367513_____

My Commission expires: _Dec 31, 2015_____

*Notary Seal*

Loan Originator Organization

Mortgage Loan Originator Organization:    **American Nationwide Mortgage Company, Inc**

Nationwide Mortgage Licensing system and Registry Identification Number: ███████

Individual Loan Originator

Mortgage Loan Originator:    **John O'Connor**

Nationwide Mortgage Licensing system and Registry Identification Number: ███████

HECMFirstNote-2013

# Allonge

| | |
|---|---|
| Loan Number: | ███ |
| FHA Case Number: | ███ |
| Borrower Name(s): | **Michael J Underhill** |
| Property Address: | **2000 Miller School Road**<br>**Charlottesville, Virginia 22903** |
| Note/Loan Amount: | **$705,000.00** |
| Note/Loan Date: | **11/25/2013** |

*PAY TO THE ORDER OF:*

**Urban Financial Group Inc.**

WITHOUT RECOURSE

| | |
|---|---|
| Company Name: | **American Nationwide Mortgage Company, Inc** |
| Signature: | *James Rogers* |
| Name: | James Rogers |
| Title: | President |

Loan Officer Company NMLS #:
Loan Officer  NMLS #:
2008-2013 ReverseVision, Inc.



Page 1 of 1

Printed: 11/25/2013
Allonge  ███

# Allonge

| | |
|---|---|
| Loan Number: | ███████ |
| FHA Case Number: | ███████████ |
| Borrower Name(s): | **Michael J Underhill** |
| Property Address: | **2000 Miller School Road**<br>**Charlottesville, Virginia 22903** |
| Note/Loan Amount: | **$705,000.00** |
| Note/Loan Date: | **11/25/2013** |

*PAY TO THE ORDER OF:*

WITHOUT RECOURSE

| | |
|---|---|
| Company Name: | **Urban Financial of America, LLC** |
| Signature: | |
| Name: | Miles Findley |
| Title: | Assistant Vice President |

AllongeUrbanWholesale

0 6 1 0 8

**Instrument Control Number**

## Commonwealth of Virginia
**Land Record Instruments**
**Cover Sheet - Form A**

**[ILS VLR Cover Sheet Agent 1.0.66]**

```
Doc ID:    032771140014 Type: DEE
Recorded: 12/03/2013 at 10:51:29 AM
Fee Amt: $2,406.00 Page 1 of 14
Albemarle County, VA
Debra M. Shipp Circuit Clerk
File# 2013-00016108
BK 4441 PG 261-274
```

| | | |
|---|---|---|
| Date of Instrument: | [12/3/2013 ] | |
| Instrument Type: | [DOT ] | |
| Number of Parcels | [ 1] | |
| Number of Pages | [ 13] | |
| City [ ] County [x] | [Albemarle County | ] |

(Box for Deed Stamp Only)

**First and Second Grantors**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [Underhill ] | [Michael ] | [J ] | [ ] |
| [ ] | [ ] | [ ] | [ ] |

**First and Second Grantees**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [Miller ] | [Larry ] | [L ] | [ ] |
| [ ] | [ ] | [ ] | [ ] |

| Grantee Address | (Name) | [Larry L. Miller | ] |
|---|---|---|---|
| | (Address 1) | [1160 Pepsi Place | ] |
| | (Address 2) | [Suite 341 | ] |
| | (City, State, Zip) | [Charlottesville | ] [VA ] [22901 ] |

Consideration [705,000.00 ] Existing Debt [0.00 ] Assumption Balance [0.00 ]

| Prior Instr. Recorded at: City [ ] County [ ] [ | ] Percent. in this Juris. [ 100] |
|---|---|
| Book [ ] Page [ ] | Instr. No [ ] |
| Parcel Identification No (PIN) | [085A0-00-00-03100 ] |
| Tax Map Num. (if different than PIN) | [085A0-00-00-03100 ] |
| Short Property Description | [Lot containing 2.366 Acres ] |
| | [Stepping Stone Manor ] |
| Current Property Address (Address 1) | [2000 Miller School Road ] |
| (Address 2) | [ ] |
| (City, State, Zip) | [Charlottesville ] [VA ] [ ] |

| Instrument Prepared by | [American Nationwide Mortgage C | ] |
|---|---|---|
| Recording Paid for by | [Miller Law Group PC | ] |
| Return Recording to (Name) | [Miller Law Group PC | ] |
| (Address 1) | [1160 Pepsi Place | ] |
| (Address 2) | [Suite 341 | ] |
| (City, State, Zip) | [Charlottesville | ] [VA ] [22901 ] |
| Customer Case ID | [ ] [ | ] [ ] |



**Cover Sheet Page # 1 of 1**

Record and Return to:      American Nationwide Mortgage Company, Inc
                                  3820 Northdale Blvd,  Suite 111A
                                  Tampa, FL 33624

Prepared By:               American Nationwide Mortgage Company, Inc
                                  3820 Northdale Blvd,  Suite 111A
                                  Tampa, FL 33624

_____ **[Space Above This Line For Recording Data]** _____

**Commonwealth of VIRGINIA**              FHA Case No. ██████████
                                     Loan No. █████ ██████
                                     MIN: ████████████

# FIXED RATE
# HOME EQUITY CONVERSION DEED OF TRUST

### THIS IS A CREDIT LINE DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on **November 25, 2013**. The grantor is **Michael J Underhill, unmarried** , whose address is  **2000 Miller School Road, Charlottesville, Virginia 22903** ("Borrower").  The trustee is **Larry L. Miller**, a resident of the Commonwealth of Virginia, whose full residence or business address is  **1160 Pepsi Place, Suite 341, Charlottesville, VA 22901**, trustees (any one of whom may act and who are referred to as "Trustee"). Trustee is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. The beneficiary is **Mortgage Electronic Registration Systems Inc. ("MERS")**, which is organized and existing under the laws of **Delaware**, and whose address is **P.O. Box 2026, Flint, MI 48501-2026, telephone (888) 679-MERS. American Nationwide Mortgage Company, Inc is organized and existing under the laws of United States of America, and has an address of 3820 Northdale Blvd,  Suite 111A, Tampa, FL 33624** ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Fixed-Rate Note dated the same date as this Security Instrument ("Note").  **The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a fixed rate (interest), and all renewals, extensions and modifications of the Note, up to a maximum principal amount of  **Seven Hundred Five Thousand Dollars and Zero Cents (U.S.**

                                    HECM First Deed Of Trust

**$705,000.00**); (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on **December 16, 2093**.  For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in **ALBEMARLE** County, VIRGINIA:

**See legal description as Exhibit A attached hereto and made a part hereof for all intents and purposes**

which has the address of
**2000 Miller School Road, Charlottesville, Virginia 22903**, ("Property Address")

TO HAVE AND TO HOLD said property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

PROVIDED, HOWEVER, that if I pay to you the debt described above and all additional advances and all other sums payable by me to you under this Security Instrument and under the terms of the Agreement, together with interest thereon, and I perform and discharge all of my other obligations under the Agreement and Security Instrument as and when required, and you cancel the Agreement and my Account thereunder, then this Security Instrument and the estate hereby granted shall cease and become void upon the recordation of an instrument of release or satisfaction.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest**. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for

HECM First Deed Of Trust

in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

HECM First Deed Of Trust

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

   **(a) Due and Payable.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:

      (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

      (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

   **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

      (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

HECM First Deed Of Trust

(ii) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

**(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 (a)(ii) and (b) occur.

**(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed-in-lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment-in-full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for

immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

## 12. Lien Status.

### (a) Modification.

Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

### (b) Tax Deferral Programs.

Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

### (c) Prior Liens.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 13. Relationship to Second Security Instrument.

### (a) Second Security Instrument. In order to secure payments which the Secretary may make to or

on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

> (i) This Security Instrument is assigned to the Secretary; or

> (ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

> If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

> (i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

> (ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this

Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment-in-full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not more than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.**

HECM First Deed Of Trust

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**24. Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

**25. Compound Interest.** At the end of each month, accrued but unpaid interest shall be added to and made a part of the principal balance as a Loan Advance and shall likewise thereafter accrue interest.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider          ☐ Planned Unit Development Rider

☐ Other [Specify]

HECM First Deed Of Trust

**27 . Nominee Capacity of MERS.** MERS serves as beneficiary of record and secured party solely as nominee for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Beneficiary herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Deed of Trust.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (SEAL)     _____
Michael J Underhill                                        Date

HECM First Deed Of Trust

_____ **[Space Below This Line For Acknowledgment]** _____

State of VIRGINIA

County of _Albemarle_

The foregoing instrument was acknowledged before me this _25th Day of November_ (date) by _2013_

_Michael J. Underhill_____ (name of person acknowledged).

_____
Signature of Person Taking Acknowledgment

_Notary Public_____
Title or rank

_367513_____
Serial Number, if any

*Notary Seal*

My commission expires the _31_ day of _December_, _2015_.

**Loan Originator Organization**

Mortgage Loan Originator Organization:      **American Nationwide Mortgage Company, Inc**
Nationwide Mortgage Licensing system and Registry Identification Number:      ███

**Individual Loan Originator**

Mortgage Loan Originator:      **John O'Connor**
Nationwide Mortgage Licensing system and Registry Identification Number:      ███

_Fixed Rate Home Equity_
_Conversion Deed of Trust_
_Dated 11/25/13_
_12 Pages_

# EXHIBIT A

Exhibit A to the Mortgage made on **November 25, 2013**, by **Michael J Underhill, unmarried** ("Borrower") to **Mortgage Electronic Registration Systems, Inc. ("MERS")** ("Beneficiary"). The Property is located in the county of **ALBEMARLE**, state of **Virginia**, described as follows:

### Description of Property

SEE ATTACHED

HECM First Deed Of Trust

D/T Attachment

## SCHEDULE "A"

ALL those two certain tracts or parcels of land, with the improvements thereon and appurtenances thereto, situated in Albemarle County, Virginia, fronting on State Route 692 at the northwest corner of the intersection of State Route 692 and State Route 635 in the village of Batesville, one of said lots containing about one (1) acre and the other contiguous lot being a square lot of approximately two hundred (200) feet by two hundred (200) feet, both tracts being shown as one parcel designated Parcel 31 on Albemarle County Tax Map 85A, Batesville insert.

This property is currently known by House Number 2000 Miller School Road, Batesville VA 22924.

BEING the same real estate conveyed to Michael J. Underhill and Marylaure Underhill, husband and wife, as tenants by the entirety with the right of survivorship as at common law, by deed from Louise May Coleman, et. als., dated November 15, 1985, recorded February 18, 1986, in the Clerk's Office, Circuit Court, Albemarle County, Virginia, in Deed Book 868, Page 159. Marylaure Underhill died on March 23, 2009 and by operation of law fee simple title vested in her widower, Michael J. Underhill, surviving tenant.

GPIN/Map Number:        085A0-00-00-03100

RECORDED IN CLERK'S OFFICE OF
ALBEMARLE ON
DECEMBER 3, 2013 at 10:51:29 AM
AS REQUIRED BY VA CODE §58.1-802
STATE: $0.00    LOCAL: $0.00
ALBEMARLE COUNTY, VA
DEBRA M. SHIPP CIRCUIT CLERK

# AFFIDAVIT

STATE OF VIRGINIA
COUNTY OF ALBEMARLE

I, Michael Underhill, the undersigned, acknowledge and state that the following

information is within personal knowledge and belief:

The address 2000 Miller School Road Batesville VA 22924 and 2000 Miller School Road

Charlottesville, VA 22903 are one in the same and an interchangeable address.  The

counties have been changed for the purposes of mail delivery and the 911 emergency

system.

Michael Underhill

SUBSCRIBED AND SWORN TO before me this _21_ day of _July_, 20_14_, by

NOTARY PUBLIC

My Commission Expires: November 30, 2017
Registration Number: 7576369

TRACIE RENEE SIMONIN
NOTARY PUBLIC
REG. #7576369
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES NOVEMBER 30, 2017